[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
By complaint dated February 20, 2001, the Plaintiff wife, Cherie L. Carignan, commenced this action seeking a dissolution of marriage on the grounds of irretrievable breakdown and other relief against the Defendant husband, Jeffrey A. Carignan. Attorney Tammy Gildea was appointed guardian ad litem for the minor children by order dated June 20, 2001. On October 1, 2001, the Plaintiff, pro se, the Defendant with counsel and counsel for the minor children appeared before the court. Testimony and exhibits were presented to the court on October 1, 2001 and October 4, 2001. The Court, after hearing the testimony and reviewing the exhibits and final arguments of the parties, makes the following findings of fact.
The Plaintiff wife (whose birth name was Cherie L. Johnson) married the Defendant husband on May 19, 1990 in Norwich, Connecticut. The Plaintiff has resided continuously in the State of Connecticut for at least one year next preceding the date of filing her complaint. All statutory stays have expired. The following minor children have been born to the Plaintiff wife while issue of the marriage; namely: Keith N. R. Carignan born 10/16/90, Kolby E J. Carignan born 10/27/92, Kelsie C.J. Carignan born 9/8/94, Kaila A.L. Carignan born 12/12/95 and Kurtis A. S. Carignan born 3/3/99. No other minor children have been born to the Plaintiff wife since the date of the marriage. The Court further finds that no state or municipal agency is contributing to the support of the parties or their minor children.
The Plaintiff is a 33 year old mother in good physical health. She presently is employed as a sales person at Home Depot where she has worked for the last year. She enjoys a pay scale of $10.50 per hour working approximately 28 hours per week. She works on weekends from approximately 8:00 a.m. to 5:00 or 6:00 p.m. and two additional weekdays from 9:00 a.m. to 3:00 p.m.. Her prior job experience includes employment at Staples, housekeeping supervisor at the Ramada Inn, housekeeping at Foxwoods and as an egg inspector at Spafas in Preston, Connecticut. Her CT Page 15631 only additional source of income is $40.00 per week received from her brother who presently resides at the marital residence on a temporary basis. The Court concludes that the Plaintiff is presently working to her capacity if she is awarded the primary residential custody of the minor children. Miller v. Miller, 181 Conn. 610 (1980); Carey v. Carey,29 Conn. App. 436 (1992).
The Defendant husband is a 34 year old individual with an 1 Ph grade education. He enjoys excellent health and for the past ten years has been a supervisor at the Plant Group, Inc., in Franklin, Connecticut. He is employed Monday through Friday from 8:00 am. to 4:30 p.m., and again on Saturday from 8:00 a.m. until noon on a regular basis from March through the first week of June. The Defendant also enjoys overtime between the months of March and August. He enjoys an average weekly income of $740.36 from his employment as a supervisor. He had previous labor-intensive jobs including welding employment after completion of welding school. The Court concludes that the Defendant is also working to earning capacity. Miller, Carey, supra.
The parties met in July of 1989 and married after an approximate ten-month courtship. The marriage of the parties was beset with financial and emotional difficulties within a few years of the marriage date. The parties could not manage money. The plaintiff was not candid to him relative to the payment of bills, etc. The Plaintiff had children to care for preventing her from continuing full-time employment.
The Defendant contended the Plaintiff was unfaithful to him as early as 1995. The parties separated for a period of time, in approximately 1999. During their separation, the Plaintiff sought comfort and consolation from a third party resulting in a pregnancy. During the pregnancy, the parties reconciled. They have treated the minor child Kurtis as issue of their relationship even though, as it appears in the record, a third party is the biological father. The parties separated again after Kurtis was born due to continued arguing and financial difficulties. They were in total disagreement in how the minor children should be disciplined.
Financial problems and issues were a constant concern of the parties. The Defendant was unhappy in that the Plaintiff failed to keep a job. The Plaintiff in turn could not continue the type of work available to her due to her limited skill and education required her to work long hours making her incapable to physically deal with the demands of her five children.
After further attempts of reconciliation after separation, the Plaintiff filed for a divorce against the Defendant and obtained the CT Page 15632 restraining order against him. The Defendant moved in to his mother's residence. After a period of approximately one to one and a half months, the defendant returned to the marital residence where he is presently residing with the Plaintiff, the five minor children and the Plaintiffs brother.
It is clear from the testimony that the marital relationship between the parties was doomed from the outset due to the financial and emotional difficulties. Both of the parties were immature in their dealings with each other concerning the appropriate methods to discipline and raise their children. The Court concludes that both of the parties are at fault for the cause of the breakdown of the marriage. It takes two strong individuals pulling in the same direction to raise five children with the limited income, education, skills and support system available to the Plaintiff and Defendant. Their inability to deal with each other on a mature emotional level coupled with the parties' inability to manage their finances have resulted in the present sad state of affairs. His anger and her infidelity both contributed to the marital breakdown.
During the pendente lite stage, this matter was referred to Family Relations for a custody evaluation. The evaluation was submitted as an exhibit in the case. (Defendant's Exhibit A.) The Court further heard testimony of the Family Relations Officer, Neil McKeever. Mr. McKeever interviewed the parties, the minor children, and their uncle. His collateral contacts included officials from the Griswold Elementary School, including but not limited to social workers, teachers, etc. He also conferred with the children's therapist, the Norwich Youth Service officer, paternal grandmother and nurse practitioner.
His report coincides with the positions of the parties and testimony of the witnesses at trial. Mother reported that father was verbally and physically abusive to her and the children during the course of the marriage resulting in three dissolution of marriage actions and three restraining orders. She reported various incidences of alleged violence during the marriage, both physically and emotionally. She further described the Defendant as short-tempered with the children resulting in physical roughness toward them when he is angry or frustrated. She claimed he grabbed the children by the throat and arms and tossed them into their beds. She also claimed violent behavior of the Defendant including breaking a mirror, a radio, a bannister and punching holes in the wall as well as verbal assaults at her throughout the marriage.
As a result of the actions, the Plaintiff contended that the two older children, Keith and Kolby, do not antagonize their father but are frightened as a result of his previous actions. She further claimed a CT Page 15633 lack of a meaningful relationship with the paternal grandmother due to her vulgar language, and reference to mother in disrespectful terms. She also made a statement in the presence of the children that she would "like to shoot the mother."
She further contended that the Defendant was financially irresponsible to the parties at times leaving them without money during separation. She claimed that she is the best caretaker of the minor children due to her prior experience and the love and attention she shows towards the children. She further testified as to a method of discipline far different from the Defendant; i.e., without physical and/or verbal confrontation as she alleged is used by the Defendant. The Plaintiff claims that she should be the sole custodial parent. She claims that she can care for all five minor children in the marital residence by means of income from her part-time employment at Home Depot in addition to guideline child support. She depends upon using her brother or other individuals for daycare to watch the children while she is working.
The Defendant reported to the Family Relations Officer and testified in court to a contrary portrayal of his actions. He claimed that the only incidences of violence and property damage occurred early in their union when he grabbed his wife by the chin and damaged the items referred to above as claimed by her. He denied any other violence or damage. He denied that any of his children are frightened of him. He asserted that he may have grabbed his sons by the arm or by the back of the neck when they were arguing or even slapped them on the buttocks, but denied the other actions claimed by the Plaintiff. While he admits his mother made a statement concerning her wishes to shoot the Plaintiff, he admonished her for it and is convinced said statement was made only in frustration, with no intent to in any way injure or harm the Plaintiff.
The Defendant contended at this time he should be the primary caretaker for the children. He is employed on a full-time basis and will utilize his mother for daycare while employed. The paternal grandmother testified that she intends to sell her two-bedroom trailer and move into the family residence with the Defendant if permitted by the court. The Defendant stated that his method of discipline and care for the minor children far outweighs mother's lackadaisical approach at discipline. He further testified that mother on different occasions was found sleeping in the home while the children were playing unattended and further finding the minor children at various times engaged in play at neighbors' residences without adult supervision.
Family Relations officer reported and testified that in his opinion primary physical residence of the children should be with the Plaintiff CT Page 15634 mother. He further opined that the Court should order the matter reviewed within a six month period to see how mother progresses in caring for five minor children on her own in the marital residence. Guardian ad litem, with minor variation, concurred with the position of the Family Relations officer.
Again, as is typical in family cases, the Court is left with the unenviable job to determine who should be the primary residential parent of the five minor children. What makes this case more difficult than most is the limited financial income resources of the parties, the conflicts between the Plaintiff and Defendant and extended family, and the needs and wants of five young children.
As to the children, Keith, Kolby and Kelsie and Kaila as of September 2002, are all enrolled in the Griswold School system. Keith is reported to be a fine student who attends school neat, clean and appropriately dressed. He has good attendance and is not a discipline problem and completes his homework. Kolby is a 9 year old in fourth grade. He completed his third grade classes attaining a B average. He also attends school neat, clean and appropriately dressed with good attendance and no discipline problems.
Kelsie is 7 years old with Kaila, 6 years old. Both children were reported by the school social worker as performing in a positive manner both academically and socially. The social worker also reported that the children appeared well cared for; attendance for Kelsie was good. The one negative report by the social worker concerned mother's traveling out of state for approximately a two-week period of time during the school year with Kaila accompanying her and not attending school. The minor child Kurtis is in preschool and reports of all witnesses is developing normally as a healthy and happy child. As to their medical condition, all of the children were found to be in good physical health receiving the proper medical care and attention.
After reviewing all of the testimony and exhibits submitted in the record, it is clear to the Court that all five children, in spite of the ammus and immaturity of their parents, are growing both physically, socially and educationally in an appropriate manner. It is also clear that both the Plaintiff and Defendant, without the assistance of an extended family or expensive daycare, are both unable to care for and raise the children alone. There is insufficient income from employment of the Plaintiff and Defendant to sustain two separate households to raise these five minor children in a lifestyle that they are entitled to.
As a result of the economic realities of the present controversy, the CT Page 15635 Court ordered the Plaintiff and Defendant to discuss their marital differences to see if any resolution could be made resulting in a reconciliation of the parties. Said atypical order was necessary in this case. It is clear that the Plaintiff and Defendant cannot raise their children in a wholesome and economically sound lifestyle living in two separate residences. The Court ordered the parties to report back to court in 30 days as to the success of said reconciliation attempts.
As a result of the parties reporting no agreement, the Court is left with a financial and emotional mess to straighten out. The Court concludes that the parties shall share in the raising of the five children. They both need the assistance of their mothers or third parties to assist in day care. The influence of the Plaintiffs brother in the relationship of the Plaintiff and Defendant has caused additional unneeded discord. They also permitted Plaintiffs brother to continue to reside in the marital residence without paying adequate amount for room and board. In addition, he has failed to reasonably assist the parties in child care while the Plaintiff and Defendant are working. He will have to leave the family residence in the near future.
The Plaintiff has relied on friends and family (formerly, the maternal grandmother) to assist in child care, while she is working and the Defendant is working. The Defendant has also relied on his mother to assist in child care when needed. The Court concludes that the Plaintiff mother shall reside with the children at the marital residence. The Defendant father shall have access with the children overnight at his mother's trailer or any other residence established by him. He shall also have the right to spend time with the children on weekends at the family residence while the Plaintiff is working. The parties shall continue to own the family residence as tenants in common, with the Plaintiff to pay the mortgage, taxes and insurance from the child support paid by the Defendant, with the children to remain as residents in said home. The Defendant shall pay alimony as ordered based upon the earnings and future earning capacity of the parties. Venuti v. Venuti, 185 Conn. 156 (1981).
It is also clear that the Plaintiff mother and Defendant father need counseling to deal with child rearing and other emotional issues. The parties also need to interact in dealing with the every day issues involving their children.
The Court has considered all of the statutory factors set out in Connecticut General Statutes §§ 46b-81, 82, 84 and 62, and other pertiment statutes, tax implications, earning and earning capacity differential, cause for the breakdown of the marriage and consequences of the financial awards set forth below. The Court, with jurisdiction in CT Page 15636 this matter, finds that the statutory stays have expired and the facts set out in the complaint are proven true. Judgment shall enter dissolving the marriage of the parties on the grounds of irretrievable breakdown. It is further ordered:
1. CUSTODY.
The parties shall share joint legal and physical custody of the five minor children. The Plaintiff and Defendant shall confer with each other as to major issues of health, education, non-emergency medical care, religion and education. Any disagreement shall be mediated by the guardian ad litem prior to any motion filed with the Court. The Plaintiff shall have physical custody of the minor children from each Sunday at 8:00 p.m. through Friday at 5:00 p.m. and shall reside at the family residence with the minor children. The Defendant shall have physical custody of the minor children each Friday from 5:00 p.m. until Sunday at 8:00 p.m. The Defendant shall be entitled to exercise his access time, including overnights at the marital residence with notice to the Plaintiff by 5:00 p.m. on the Monday preceding weekend visitation. The Plaintiff will have the option to vacate said residence if used by the Defendant for said weekend access. The paternal grandmother shall be permitted to stay overnight at the marital residence during the Defendant's weekend physical custody with the minor children.
The parties shall divide Thanksgiving and Christmas as follows: the mother shall have the minor children on Thanksgiving Day at the marital residence or any other location until 3:00 p.m. and the Defendant shall have the minor children from 3:00 p.m. until the remainder of the weekend ending at Sunday at 8:00 p.m. The plaintiff shall have the children on Christmas Eve Day from 7:00 p.m. until Christmas Day at 2:00 p.m. The Defendant shall have the children on Christmas Day from 2:00 p.m. overnight to December 26th at 6:00 p.m. Holiday access supercedes normal access.
2. THIRD PARTY CARE OF MINOR CHILDREN.
If the Plaintiff or Defendant cannot personally care for some or all of the minor children during the period of physical custody, each shall arrange for daycare by a third party adult (other than the Plaintiffs brother) with no cost to the parties. Prior to any daycare provided at a price to the parties, each must offer the child or children to the other for child care purposes. If professional daycare is required, the parties shall divide the daycare expense in accordance with the child support guidelines. CT Page 15637
3. CHILD SUPPORT. MEDICAL EXPENSES AND DAYCARE.
The Defendant shall pay $272.00 per week child support for support of the five minor children. Said sum is in conformance with the child support guidelines. The defendant shall maintain health insurance through his place of employment for the minor children if available at reasonable cost or both parties shall maintain said minor children on Husky insurance, if any cost therefor paid by the defendant. The parties shall divide unreimbursed and uncovered medical expenses and reasonable and necessary daycare expenses in accordance with the guidelines: 65% paid by the Plaintiff and 35% paid by the Defendant.
4. ALIMONY.
The Defendant shall pay alimony in the amount of $50.00 per week. Said alimony shall terminate upon the first of the occurrence of the following events: (1) death of either party, (2) remarriage of the wife, (3) cohabitation by the wife as provided by statute, (4) January 1, 2012. Said alimony is modifiable as to amount only and not modifiable as to term and is tax deductible by the defendant and tax includable to the plaintiff.
5. REAL PROPERTY.
The town of the marital residence is designated as the place of residence for the minor children for school purposes. The plaintiff shall have exclusive use and possession of said residence for all times other than the use of the premises by the Defendant as set out in paragraph 1 of these orders. The Defendant shall vacate the premises on or before December 14, 2002. The Plaintiff shall pay and hold the Defendant harmless from any liability of monthly payment of mortgage, taxes, insurance and maintenance on said premises. Any repairs or improvements over $500.00 shall be paid equally by the parties. The Plaintiff shall have the benefit of the tax deductions for mortgage interest and real estate taxes commencing calendar year 2003. The Defendant shall take said deductions for calendar year 2002. The Plaintiffs brother shall vacate said residence by January 10, 2003 or the parties shall commence a summary process action and obtain a court order to evict him from said residence. The parties shall own said marital residence as tenants in common, each owning a fifty percent (50%) interest in said real property and improvements. Removal of the minor children from the family home or remarriage or cohabitation by statute of either the Plaintiff or Defendant shall be considered a substantial change in circumstances in determining any future order of custody or access. CT Page 15638
The marital residence shall be sold when youngest minor child turns 18 years old or by written agreement of the parties or further order of the court. Any net proceeds from the sale of said proceeds shall be divided equally by the parties. Any deficiency owed to any creditor for short sale shall also be divided equally by the parties. The Court shall retain jurisdiction concerning the use or sale of the marital residence in the future.
6. PERSONAL PROPERTY.
Each party shall retain all right, title and interest in and to the personal property (other than automobiles) presently in her or his possession including bank accounts.
7. LIFE INSURANCE.
The parties shall maintain any and all life insurance policies provided by future employment for the minor children until the youngest child reaches the age of majority.
8. COUNSEL FEES.
Counsel fees for the guardian ad litem, Attorney Tammy Gildea, shall be paid at state rates upon submission of an affidavit of debt.
9. COBRA INSURANCE.
The parties are ordered to complete and file any documents necessary to provide COBRA insurance coverage for the Plaintiff at her sole cost and expense.
10. DEBTS.
The Defendant shall be responsible for the debts listed to Howard Shift, Mary Eslick and Riccardo's Music listed on his financial affidavit dated November 1, 2002. The parties shall each pay (one-half) of the debts the State of Connecticut for food stamps as set out on said affidavits.
11. EDUCATIONAL SUPPORT.
The Plaintiff and the Defendant shall each have the right to file a motion or petition for educational support of the children post judgment as provided in Connecticut Public Acts 02-128. CT Page 15639
12. ANGER MANAGEMENT COUNSELING.
The Defendant shall obtain therapy and counseling for anger management.
13. COUNSELING FOR CHILDREN AND PLAINTIFF.
The minor children shall continue in counseling with UCES, until said child or children are released from counseling or until further order of the court. The Plaintiff shall enter counseling to deal with parenting skills and interaction with the Defendant in child care and development through UCFS or other private or public agency if available without cost.
14. TAX EXEMPTIONS.
The Defendant shall take the five minor children as tax exemptions for State and federal income tax purposes, calendar year 2002, and each commencing year thereafter until modified by the Court.
15. AUTOMOBILES.
The Plaintiff shall have all right, title and interest in and to the Oldsmobile 88 and shall pay and hold the Defendant harmless from any liability on the car loan. The Defendant shall have all right, title and interest in and to the 1981 Dodge Ram. The Defendant shall repair the 1994 Dodge Caravan for use by him to transport the children within 60 days of the date of the judgment or shall sell the vehicle as damaged and divide the net proceeds from the sale of said vehicle equally with the Plaintiff.
 ___________________ Devine, J.
CT Page 15640